Filed 4/30/13  P. v. Corn CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038127 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS100870A) |
| v. | |
| AARON CORN, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Aaron Corn pleaded no contest to driving with a blood-alcohol content of 0.08 percent or more and causing injury (Veh. Code, § 23153, subd. (b)), and driving or taking a vehicle without the owner's consent (former Veh. Code, § 10851, subd. (a)). He also admitted that he caused bodily injury to multiple victims (Veh. Code, § 23558) and that he personally inflicted great bodily injury upon another victim who suffered paralysis (Pen. Code, § 12022.7, subd. (b)).[1]  The court denied probation and sentenced defendant to seven years four months in prison.

On appeal, defendant contends that the trial court erred in concluding that he was presumptively ineligible for probation under section 1203, subdivision (e)(3) (hereafter section 1203(e)(3)), which generally provides that probation shall not be granted except

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

in unusual cases if the defendant has "willfully inflicted great bodily injury" in the perpetration of the crime. For reasons that we will explain, we will reverse the judgment and remand the matter for a new sentencing hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Information, Pleas, and Admissions*

In January 2011, defendant was charged by amended information with a violation of Vehicle Code section 23153, subdivision (a) (driving under the influence of alcohol causing injury; count 1), a violation of Vehicle Code section 23153, subdivision (b) (driving with a blood-alcohol content of 0.08 percent or more and causing injury; count 2), wrong way driving on a freeway causing injury (former Veh. Code, § 21651, subd. (c); count 3), and driving or taking a vehicle without the owner's consent (former Veh. Code, § 10851, subd. (a); count 4). The information further alleged as to counts 1 through 3 that defendant personally inflicted great bodily injury upon three victims, one of whom suffered paralysis (§§ 12022.7, subds. (a) & (b), 1192.7, subd. (c)(8), 667.5, subd. (c)(8)).

The information was subsequently amended to allege as to count 2 that defendant caused bodily injury to multiple victims (Veh. Code, § 23558). Defendant pleaded no contest to count 2 (Veh. Code, § 23153, subd. (b); driving with a blood-alcohol content of 0.08 percent or more and causing injury), and count 4 (former Veh. Code, § 10851, subd. (a); driving or taking a vehicle without the owner's consent). He also admitted as to count 2 that he caused bodily injury to multiple victims (Veh. Code, § 23558), and that he personally inflicted great bodily injury upon another victim who suffered paralysis (§ 12022.7, subd. (b)). Defendant entered his pleas and admissions with the understanding that the sentencing "range [was] open from felony probation [¶] . . . [¶] up to nine years, eight months" in prison.

2

**B.** *The Probation Report*

According to the probation report, which was based on reports by various law enforcement agencies and a report by a county crime laboratory, law enforcement officers were dispatched on February 21, 2010, about 3:30 a.m., based on reports of a single vehicle injury collision. The vehicle had crashed into a tree, and the entire engine compartment was crushed into the front compartment of the vehicle.

Defendant, who was 18 years old, had been driving the vehicle at the time of the collision. He was initially conscious and incoherent after the collision but was later unconscious. Officers smelled a strong odor of alcohol from defendant. He sustained serious injuries to his upper torso and head, including broken ribs, a punctured lung, a broken nose, and a skull fracture.

There were four passengers in the vehicle and all of them were 17 years old. The front passenger suffered a broken hand and swelling to the face. The right rear passenger suffered major injuries to the chest and upper torso and had neck and back pain. The center rear passenger had major injuries to the chest and a loss of feeling in the upper torso. It was later determined that this passenger had a spinal cord injury and would never regain the ability to walk. The left rear passenger suffered minor injuries to the chest and torso and had neck and back pain.

Defendant and two of the passengers were flown to medical centers out of the area, and the remaining two passengers were taken by ambulance to a local hospital. A blood specimen taken from defendant approximately four hours after the collision showed a blood-alcohol content of 0.09 percent.

No occupant of the vehicle, other than the left rear passenger, could be interviewed at the scene due to the extent of each person's injuries. Officers eventually determined that due to weather and road conditions, unsafe speeds, and defendant's intoxication, he was unable to negotiate a curve in the roadway. He crossed over into the

3

opposite lane of traffic, drove down a steep embankment, and collided head on into a large tree. Defendant was an unlicensed driver.

At some point, the police received a report that the vehicle had been stolen. The vehicle owner reported that numerous people had come to his house after a high school basketball game had ended, and that he had not given anyone permission to use his vehicle. The vehicle owner later clarified that he had let defendant drive the vehicle earlier in the evening. The vehicle owner stated that later, after defendant had become intoxicated at the house and prior to the vehicle owner going to sleep, he did not give defendant permission to use the vehicle.

In the days following the collision, the police interviewed several people who had been at the vehicle owner's residence at the same time as defendant and/or had been in the vehicle at the time of the collision. According to the interviews, defendant brought beer to the residence. The vehicle owner reported that he had not wanted to invite defendant to the party at his residence because defendant "always caused problems," but he eventually agreed to let defendant attend the party. At the residence, various people played " 'beer pong,' " and defendant began drinking alcohol. Defendant eventually took the vehicle in order to give several people a ride home. There were seven people in the five-passenger vehicle. After dropping off two people, defendant crashed the vehicle. Defendant had previously been the passenger in a vehicle in a December 2009 incident in which the driver was under the influence.

In February 2011, the probation officer interviewed defendant in jail. Defendant reported that he began drinking alcohol at age 15, and within one or two years he was drinking alcohol on a daily basis. He stated that he had refrained from drinking alcohol for approximately two months prior to the incident and that he had been attending "AA meetings" daily. Defendant admitted that prior to the incident, he and others were waiting near a store for someone to buy them beer, but he denied contributing money towards the purchase. After he went to the vehicle owner's residence, it was decided that

he would use the vehicle to bring more people to the residence. He used the vehicle twice to pick up friends to bring back to the residence. Defendant stated that he had not intended to drink alcohol that night, but he admitted that he drank at least four or five beers at the residence beginning about 1:00 a.m. Eventually one of his friends needed a ride home, and he still had keys to the vehicle. Defendant did not remember driving recklessly or the collision. He indicated that it was "normal for him to 'black out' when he drank alcohol." Defendant took responsibility for causing the collision and expressed remorse, but he did not feel that he deserved prison time for something he did not remember. He wanted to participate in a program talking to youth about drinking and driving, make amends to those he had hurt, and eventually go to college.

The probation officer also interviewed the center rear passenger who had suffered a spinal cord injury. The victim reported that a doctor had described the injury as "the worst lap belt injury he has seen in twenty three years." The victim wanted defendant to be held accountable for what he did but did not want him to go to prison.

The father of the left rear passenger, who suffered the least serious physical injuries of the passengers, told the probation officer that his son still suffered emotionally from the collision. According to the father, the son had stated that he and others in the vehicle were screaming at defendant to slow down and that, even after hitting a guardrail, defendant continued to drive recklessly. The father described defendant as manipulative and as one who never learned from his mistakes. The son submitted a letter, as did other individuals, in support of the defendant. The son stated that defendant had been a close friend since middle school, and that defendant had "already served more time [in jail] than he deserves for what happened."

The probation officer reported that defendant had frequent contact with police over the years, and that he was on juvenile probation at the time of the instant offenses. Defendant had appeared at a review hearing in juvenile court a few days before the collision. At that time, it was reported to the juvenile court that defendant had been

5

reporting " 'diligently' " to his probation officer, submitted to random drug testing with negative results, was attending high school and was on track to graduate the following June, had been exhibiting positive behavior at school, had received "letters of intent" regarding playing baseball in college, and had been attending daily "AA meetings" and individual counseling. The probation officer believed, however, that although defendant was young, he had had "multiple chances on probation to conquer his alcoholism." Further, "[h]is prior performance on probation as a juvenile was deplorable and there are no strong indications he has undergone a major metamorphosis which will suddenly allow him to comply with Court orders." The probation officer recommended a prison sentence for defendant "given the serious impact [his] illegal conduct had on multiple lives." To the extent the trial court decided to grant probation, the probation officer provided the court with an "alternative recommendation," which set forth the proposed conditions of probation. The probation officer further stated in the probation report that, "[p]ursuant to 1203(e)(3) PC, absent unusual circumstances, the defendant is *ineligible for a grant of probation*. The Court could possibly cite Rule 4.413(c)(2)(B) and 4.413(c)(2)(C) to justify a grant of probation." (Italics added.)

## C. *Defendant's Written Sentencing Statement*

In a written sentencing statement, defense counsel argued that defendant was "suitable for probation" and requested that the trial court follow the probation department's "alternative recommendation" for probation. Counsel did not address whether defendant was presumptively ineligible for probation under section 1203(e)(3), as referenced in the probation report. Defense counsel stated that defendant had been accepted into a substance abuse program, Jericho Project, which would give defendant "the treatment he needs." Among the documents attached to the sentencing statement was a letter from Jericho Project suggesting that defendant be placed in a six-month to one-year treatment program, although a two-year option was available if deemed necessary by the courts, probation, and Jericho Project.

6

**D.** *The Sentencing*

At the March 10, 2011 sentencing hearing, the trial court indicated that it had reviewed the probation report among other documents. Several individuals addressed the court, including defendant and the victim who was unable to walk. The prosecutor argued that defendant should be sentenced to the "maximum term allowable under the negotiated plea." In arguing for a prison sentence, the prosecutor made several references to the "presumptions" that apply in a case involving great bodily injury to three victims. Defense counsel requested that the court grant probation, without specifically addressing whether section 1203(e)(3) applied or addressing the prosecutor's arguments concerning the "presumptions" requiring a prison sentence in the case.

The trial court took a short recess before resuming the sentencing hearing. The court began by indicating that the sentencing determination in the case was "a difficult task." The court later stated that, "if this was an isolated incident, there was no background for [defendant], that would be different. But that's not the case here at all." The court characterized defendant's background as including "some mixture of positive contributions . . . to many people, but then he also has created a great deal of grief for a lot of people. You can't read the probation report and not walk away with this mixture." The court further stated that defendant was "a young man who consciously disregarded the fact that he knows he blacks out when he drinks. He knows that. And still, he drinks." The court believed that if one of the victims had died, "it probably would have amounted to a murder." In referring to defendant's substance abuse problem that started at age 15, the court stated that people had "hope" that defendant "can change." The court acknowledged that it was "powerfully and persuasively" argued "to some degree" that "something other than prison" should be imposed. The court also referred to the "expectation in this day and age" that a person who drinks, drives, and permanently paralyzes another "will go to prison." The court stated, "I think that's where all the *presumptions* come from that [the prosecutor] made reference to." (Italics added.)

Returning to the issue of defendant's background, the court referred to "all of the effort, all of the warnings, all of the awareness that [defendant] had about the dangers of this conduct when he drinks." The court declined to order defendant's placement in a diagnostic facility pursuant to section 1203.03, explaining that such a placement would not "help" the court with respect to the sentencing decision. The court indicated that the "primary focus" in the section 1203.03 placement is whether a defendant "could succeed on probation," which was not the "determining factor" in the case before the court. The court explained that the "determining factor" in the instant case was "the seriousness of the event in the context of [defendant's] prior record." The court concluded that defendant was "not a suitable candidate for probation" and sentenced him to seven years four months in prison.

In May 2011, defendant filed a written request for recall and modification of his sentence. In June 2011, the prosecutor filed written opposition. At a hearing on June 3, 2011, the trial court denied defendant's request.

Defendant filed a notice of appeal on April 30, 2012, after this court granted his motion for relief from default for failure to timely file a notice of appeal.

### III.    DISCUSSION

Defendant contends that section 1203(e)(3), which prohibits probation to specified persons except in certain cases, does not apply in this case. He further contends that the trial court erroneously believed that section 1203(e)(3) applied in this case, and that this erroneous belief concerning a limitation on probation was prejudicial. Defendant requests that the matter be remanded to the trial court for a new sentencing hearing.

The Attorney General contends that defendant has forfeited his appellate claim by failing to object below. The Attorney General also argues that there is no evidence in the record that the trial court relied on section 1203(e)(3) in denying probation. Further, the Attorney General contends that substantial evidence supports the implied factual findings necessary for application of section 1203(e)(3), and thus the court did not err to the extent

it relied on that subdivision.  Lastly, the Attorney General argues that even if the court erroneously relied on section 1203(e)(3), any such error was harmless.

### A. *Forfeiture*

As an initial matter, we address the issue of forfeiture.  To the extent defendant's appellate claim may have been forfeited, we will exercise our discretion to consider the claim in view of the circumstances of this case, including defendant's offense, his age, and the trial court's comments during the sentencing hearing.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6 [appellate court generally has discretion to consider claims that are not properly preserved for review]; *People v. Gutierrez* (2009) 174 Cal.App 4th 515, 520 [same].)

### B. *Standard of Review*

"The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion.  [Citation.]" (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282 (*Aubrey*); see *People v. Stuart* (2007) 156 Cal.App.4th 165, 178 (*Stuart*).)  " 'However, an erroneous understanding by the trial court of its discretionary power is not a true exercise of discretion.' [Citation.]" (*Aubrey*, *supra*, at p. 282.)  Where a trial court is under the mistaken impression that a defendant's eligibility for probation is limited, a remand for resentencing may be appropriate.  (See *People v. Alvarez* (2002) 95 Cal.App.4th 403, 409; *People v. Manriquez* (1991) 235 Cal.App.3d 1614, 1620.)

### C. *Probation Ineligibility Under Section 1203(e)(3)*

Section 1203, subdivision (e) provides that, "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons:  [¶]  . . .  [¶]  (3) Any person who *willfully* inflicted great bodily injury or torture in the perpetration of the crime of which he or she has been convicted." (*Id.*, subd. (e)(3), italics added.)  A defendant who falls within section 1203(e)(3) is presumptively ineligible for probation.  (*Stuart*, *supra*, 156

9

Cal.App.4th at p. 177.) "In such a circumstance, a court determines whether the presumption against probation has been overcome . . . ." (*Ibid.*) "If a court determines the presumption against probation is overcome, it evaluates whether or not to grant probation . . . ." (*Id.* at p. 178.)

Defendant contends that section 1203(e)(3) applies only when a defendant *intentionally* inflicts great bodily injury, and that it does not apply when great bodily injury is merely the result of the defendant's criminal conduct. The Attorney General contends that section 1203(e)(3) has broader application and that it applies when there is evidence of a defendant's *willingness* to inflict great bodily injury.

In *People v. Lewis* (2004) 120 Cal.App.4th 837 (*Lewis*), the appellate court concluded that "willfully" in section 1203(e)(3) requires a defendant to intend to cause great bodily injury, and that the section is not applicable when great bodily injury is merely the result of the defendant's crime. (*Lewis*, *supra*, at p. 853.) The court stated that "[u]sually the word 'willfully' defines a general intent crime unless the statutory language requires an intent to do some further act or achieve some future consequence. [Citation.] In the final analysis, however, the meaning of the word 'willfully' in any given statute is dependent on the context in which it is used. [Citation.]" (*Id.* at p. 852.) The court further explained: "The word 'willfully' as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute. Section 1203, subdivision (e)(3), so read requires the defendant *intentionally* inflicted great bodily injury or torture in the commission of the crime. The section describes no initial act, e.g., willfully strikes, or willfully burns, resulting in some required particular result, e.g., great bodily injury, the burning of some particular type of property. When the structure of a section requires a willful act followed by some particular result, then it is reasonable to read the willful, i.e., intentional, element as referring only to the initial act and not to the ultimate result. In such sections the word 'willfully' does not require the defendant intend the ultimate result, only that he or she

10

intended the initial act. [Citation.] [¶] The word 'willfully' in section 1203, subdivision (e)(3), does not follow this act/result form. It refers merely to a result, i.e., the infliction of great bodily injury. Given this structure of the section, we conclude the only reasonable reading of it is the word 'willful' requires the defendant's intent to cause great bodily injury or torture, not merely that the crime resulted in great bodily injury or torture. [Citation.]" (*Id.* at pp. 852-853.)

The *Lewis* court further observed that "[t]his interpretation of section 1203, subdivision (e)(3), is supported by a comparison of its language with that of the enhancement for the infliction of great bodily injury contained in section 12022.7, subdivision (a). Section 12022.7 requires a person 'personally inflict great bodily injury' on another in the commission or attempted commission of a felony. Unlike section 1203, subdivision (e)(3), it does not require that the infliction be willful. The section has been interpreted to require only a general criminal intent, i.e., the defendant need not intend great bodily injury result, the only intent required is that for the underlying felony. [Citations.]" (*Lewis*, *supra*, 120 Cal.App.4th at p. 853, fn. omitted.)

In this case, we are not persuaded by the Attorney General's contention that the *Lewis* court "erred" in its interpretation of section 1203(e)(3). In the absence of a persuasive reason to part company with *Lewis*, we conclude that section 1203(e)(3) requires a defendant to have intended to cause great bodily injury, and that the section does not apply when great bodily injury is merely the result of the defendant's crime.

**D.** *Applicability of Section 1203(e)(3) to this Case*

Defendant contends that there is no evidence that he intended to inflict great bodily injury on any occupant of the vehicle, that the trial court erroneously believed section 1203(e)(3) applied in this case, and that this erroneous belief was prejudicial. As evidence that the trial court applied section 1203(e)(3) in this case, defendant refers to the following portions of the record.

11

First, the probation officer stated in the probation report: "Pursuant to *1203(e)(3)* PC, absent unusual circumstances, the defendant is *ineligible for a grant of probation.* The Court could possibly cite Rule 4.413(c)(2)(B) and 4.413(c)(2)(C) to justify a grant of probation." (Italics added.)

Second, during the sentencing hearing, the prosecutor in arguing for a prison sentence made several references to the "presumptions" that apply in a case involving great bodily injury to three victims. The prosecutor stated: "In drawing the Court's attention to the black-letter law, I do so with the hope to impress upon this Court the absolute necessity of following that law and the *presumptions* inherent in a sentencing like this." (Italics added.) The prosecutor argued: "Instead of falling back on the tired suggestion that the Defendant should make rounds of local schools and talk about consequences of his actions, this Court now should announce loudly and clearly to the community as a whole that this conduct is not new, this conduct is not novel, it deserves the harshest of penalties, that those penalties are called for and *presumed* by the law." (Italics added.) The prosecutor further argued that the injuries suffered by three of the victims constituted great bodily injury; that "the law *presumes* that the class of individuals, specifically [defendant], who are personally responsible for inflicting great bodily injury on victims, are *presumed* to be sentenced to the Department of Corrections"; and that the court was "faced with three separate and distinct *presumptions* fashioned by the legislature, each one of them calling for a prison commitment." (Italics added.)

Third, defense counsel never disputed the probation officer's assertion in the probation report that section 1203(e)(3) applied, nor disputed the prosecutor's arguments concerning the "presumptions" requiring a prison sentence in the case.

Fourth, at the sentencing hearing the trial court indicated that the court had reviewed the probation report. Further, in denying probation the court made reference to the "presumptions" that the prosecutor had raised. In this regard, the court stated: "[T]he

12

question is, what is – you have kind of both sides of the [a]isle here, powerfully and persuasively to some degree, arguing in favor of something other than prison. And then you have what – I guess it's kind of a public expectation; what is the expectation when you get into a car after drinking, drive, and permanently paralyze someone. What is the expectation? That weighs heavily also, I think. And I think everybody recognizes that. [¶] The expectation in this day and age is that person will go to prison. I think that's where all the *presumptions* come from that [the prosecutor] made reference to." (Italics added.)

The Attorney General argues that the record does not establish that the trial court relied on section 1203(e)(3) in denying probation. The Attorney General further argues that, even if the court erroneously relied on section 1203(e)(3), any such error was harmless.

In *Lewis*, the appellate court believed that the parties, the probation officer, and the trial court "assumed . . . that [the defendant] was presumptively ineligible for probation." (*Lewis*, *supra*, 120 Cal.App.4th at p. 854.) The appellate court observed that "[t]he trial court was not asked to find and did not state on the record [the defendant] intended to inflict great bodily injury on [the victim]." (*Ibid.*) However, "[o]nly if the trial court finds that [the defendant] intended to inflict great bodily injury on [the victim] would [the defendant] be presumptively ineligible for probation under section 1203, subdivision (e)(3)." (*Ibid.*) Given the seriousness of the offense and the "importance of a clear record," among other considerations, the appellate court remanded the matter for a new sentencing hearing at which the trial court was to determine whether the defendant was presumptively ineligible for probation. (*Ibid.*)

We believe a similar disposition is warranted in this case. Prior to the sentencing hearing, the probation officer reported that defendant was presumptively ineligible for probation under section 1203(e)(3). At the sentencing hearing, the prosecutor argued that prison time was warranted and repeatedly referred to the "presumptions" that applied

13

when the victims suffered great bodily injury.  Defense counsel in requesting probation did not address or otherwise dispute the applicability of section 1203(e)(3) in the written sentencing statement or orally at the sentencing hearing.  Lastly, the trial court, although making independent observations about the case, referred to society's expectations and the presumptions raised by the prosecutor, without stating whether the presumption of probation ineligibility applied.  In view of the circumstances of this case, including defendant's offense, his age, and the court's comments during the sentencing hearing, we determine that a remand for a new sentencing hearing is appropriate.  On remand, the trial court shall determine whether defendant is presumptively ineligible for probation under section 1203(e)(3) and, if the presumption applies, whether this is an "unusual case[] where the interests of justice would best be served if the person is granted probation." (*Ibid*.)  We express no opinion as to how the trial court should resolve these issues.

## IV.  DISPOSITION

The judgment is reversed, and the matter is remanded for a new sentencing hearing.  The trial court is directed to determine whether defendant is presumptively ineligible for probation under section 1203(e)(3) and, if the presumption applies, whether this is an unusual case where the interests of justice would best be served if defendant is granted probation.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MÁRQUEZ, J.